CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
AUG 1 5 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BARBARA A. THOMPSON,<br>   Plaintiff, | )<br>) |
| v. | ) Civil Action No. 7:07cv278<br>)<br>) By: Hon. Michael F. Urbanski<br>)   United States Magistrate Judge |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>   Defendant. | )<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Barbara A. Thompson ("Thompson") brings this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of Social Security, in which the Commissioner denied Thompson's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to the undersigned's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment.

On appeal, Thompson argues that the Commissioner improperly evaluated the severity of her mental impairments and their effect on her ability to work, and failed to meet his burden of establishing that she can perform work in the national economy. Having reviewed the record, and after briefing and oral argument, the court finds that the Commissioner's opinion is not supported by substantial evidence because the ALJ failed to elicit an adequate and complete report from Dr. Nichols, a consulting psychologist. Accordingly, the decision will be reversed and remanded for further administrative consideration consistent with this Memorandum Opinion.

# I.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the Administrative Law Judge's ("ALJ") findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. § 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"),[1] considering the claimant's age,

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular

2

education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Thompson, 42 years of age on the date of her disability application, received a General Equivalency Degree in 1997. (Administrative Record ("R.") at 66) Prior to her alleged onset of disability, she worked as a stocker, picker and packer, floral designer, and waitress. (R. 69) Thompson protectively filed an application for DIB on October 9, 2003, alleging that she became disabled on December 31, 2001. (R. 52-55) Her application was denied initially and upon reconsideration. (R. 35-39, 42-44) Thompson then requested an administrative hearing, which was held on September 23, 2005. (R. 45, 299-348) During the course of the hearing, it became apparent that a consultative psychological exam was necessary before adjudication. Accordingly, the ALJ continued the hearing and required Thompson to undergo a consultative psychological exam. (R. 347) The ALJ stressed the importance of such an exam to Thompson, by telling her that the Administration is "not going to know much about you unless you go to this consultative exam." (R. 347) Dr. Jerome S. Nichols, Ph.D., saw Thompson on December 23, 2005 pursuant to the ALJ's request. A second hearing was held on April 26, 2006 to discuss the results of this examination. (R. 347, 349-81)

---

and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

3

Based on the record evidence and the testimony presented at the administrative hearings, including that of an independent Vocational Expert ("VE"), the ALJ determined that Thompson is not disabled within the meaning of the Act. (R. 15-26) At step one of the disability evaluation process, the ALJ found that Thompson had not engaged in substantial gainful activity since her alleged onset date of disability. (R. 18) At steps two and three, the ALJ found that Thompson's obesity, obsessive compulsive disorder ("OCD"), depression, hypertension, chronic low back pain, and chronic knee pain are severe impairments, although not severe enough to meet or equal the listing requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-20) The ALJ also concluded that Thompson's non-insulin dependent diabetes mellitus is not a severe impairment. (R. 20)

Before proceeding to step four, the ALJ found that Thompson retains the RFC to perform a range of light work[2] that involves no climbing of ladders, ropes, or scaffolds; occasional crawling and kneeling; and limited interaction with the public, supervisors, and coworkers, and which imposes only low to moderate levels of stress. (R. 21) In making this assessment, the ALJ determined that Thompson's statements about the intensity, duration, and limiting effects of her pain and symptoms were not fully credible based upon the evidence of record. (R. 22) At step four of the analysis, the ALJ determined that Thompson is incapable of performing her past relevant work, and at step five, the ALJ found that Thompson is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (R. 24)

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job performed in this category requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567.

4

Accordingly, the ALJ concluded that Thompson was not under a disability between December 31, 2001 and her date last insured, June 30, 2004. (R. 25)

The Appeals Council granted Thompson's request for review. On review, the Appeals Council adopted the ALJ's findings that Thompson retains the ability to perform jobs existing in significant numbers in the national economy, but found that Thompson's date last insured was March 31, 2005, rather than June 30, 2004. (R. 9) The Appeals Council's decision is the final decision of the Commissioner. Thompson now appeals that decision.

### III.

On appeal, Thompson argues that the ALJ improperly rejected the opinion of the consultative examiner, Dr. Nichols. Thompson further argues that the ALJ should have contacted Dr. Nichols to clarify his opinion. Without reaching the issue of the weight accorded to Dr. Nichols' opinion, the court finds that the ALJ should have contacted Dr. Nichols to clarify and revise his report before issuing a decision.

At Thompson's initial administrative hearing, the ALJ required Thompson to undergo a consultative psychological exam and stressed the importance of such an examination to the disability determination. (R. 347) Thompson met with Dr. Nichols on December 23, 2005 for a Mental Status Evaluation and personality test, pursuant to the ALJ's request. (R. 263-64) Dr. Nichols diagnosed Thompson with obsessive compulsive disorder, dysthymic disorder, and personality disorder with avoidant and dependent traits, and a GAF of 48.[3] Nevertheless, he noted that Thompson's prognosis would be "fair," were she to receive more intensive treatment than she was currently receiving. Dr. Nichols also completed a checklist, in which he rated

---

[3] A GAF score of 48 corresponds to "serious symptoms" or any serious impairment in social, occupational, or school functioning. DSM-IV 32 (4th ed. 1994).

5

Case 7:07-cv-00278-mfu Document 16 Filed 08/15/08 Page 5 of 10 Pageid#: 68

Thompson's mental ability to do work-related activities. (R. 269-71) He opined that Thompson was slightly limited[4] in understanding and remembering detailed instructions and in carrying out detailed instructions; moderately limited[5] in her ability to make judgments on simple work-related decisions, interact appropriately with the public, and respond appropriately to work pressures in both a usual work setting and a routine work setting; and markedly limited[6] in her ability to interact appropriately with the public and with co-workers. (R. 269-70)

In reviewing a report from a consultative examiner, the ALJ considers the following factors:

> (1) Whether the report provides evidence which serves as an adequate basis for decision making in terms of the impairment it assesses;
>
> (2) Whether the report is internally consistent; Whether all the diseases, impairments and complaints described in the history are adequately assessed and reported in the clinical findings; Whether the conclusions correlate the findings from your medical history, clinical examination and laboratory tests and explain all abnormalities;
>
> (3) Whether the report is consistent with the other information available to us within the specialty of the examination requested; Whether the report fails to mention an important or relevant complaint within that specialty that is noted in other evidence in the file (e.g., your blindness in one eye, amputations, pain, alcoholism, depression);
>
> (4) Whether this is an adequate report of examination as compared to standards set out in the course of a medical education; and
>
> (5) Whether the report is properly signed.

---

[4] The survey defined "slight" as "some mild limitation . . . but the individual can generally function well." (R. 269)

[5] "Moderate" was defined as "moderate limitation . . . but the individual is still able to function satisfactorily." (R. 269)

[6] The survey defined a "marked" limitation as a "serious limitation," where "the ability to function is severely limited but not precluded." (R. 269)

6

20 C.F.R. § 404.1519p(a). If, however, a consultative opinion is inadequate or incomplete then the ALJ must "contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b).

The ALJ conducted a second administrative hearing in this matter for the sole purpose of reviewing the report prepared by Dr. Nichols. (R. 349-380) At this hearing, it is apparent that the ALJ found Dr. Nichols' report to be inadequate and ambiguous. For example, while questioning the VE, the ALJ remarks that it is unclear whether the GAF score on the report is for "that day, that year or for what time period." (R. 361) The ALJ goes on to say: "Isn't [the GAF score] just sort of tacked on there without a – you know, sometimes . . . they'll tell you." (R. 361) Without question, at the second hearing the ALJ was unclear as to which time period the GAF score related. This is especially troubling because the VE had just testified that a GAF score of 48 suggests "some pretty profound limitations in . . . both social and occupational functioning and usually describes somebody that is not able to . . . at least hold a job." (R. 360) The VE goes on to note that any score between 48 and 50 "is an effort by the person who did the assessment to disclose the fact that the person has serious symptoms and the kinds of symptoms that would be a serious impairment, not just in social or academic functioning but work functioning." (R. 371) Given the VE's testimony, the ALJ should have contacted Dr. Nichols to clarify exactly what time period the GAF score covered.

Even more significant, however, are questions raised by the internal inconsistencies in Dr. Nichols' narrative report. Dr. Nichols noted that Thompson's worries severely compromise her ability to concentrate and attend to tasks. (R. 264) In sharp contrast to this statement, however, Dr. Nichols also noted that Thompson was able to do the Serial 7 test, without making any errors

7

to the halfway point, and that she "does appear to have good concentration ability." (R. 266)
Also, Dr. Nichols noted that Thompson was "capable of performing work activities in a consistent basis." (R. 267) Two sentences later, however, he stated that Thompson has "a mental disorder that could cause interrupts [sic] a normal workday or workweek, that is, her obsessive thinking and her phobias." (R. 267) At the second administrative hearing, the following exchange took place between the ALJ and Thompson's attorney regarding the internal inconsistencies in Dr. Nichols' report:

> ALJ: So he said two entirely and utterly inconsistent things –
>
> ATTY: Yes, Your Honor.
>
> ALJ: – on different pages.
>
> ATTY: Yes, Your Honor.
>
> ALJ: Now, Dr. Nichols should do better than this given his background with the system. He really ought to.

(R. 380) Plainly, the ALJ recognized the ambiguity in Dr. Nichols' report, and should have contacted Dr. Nichols to clarify his report as mandated by 20 C.F.R. § 404.1519p(b).

Instead, the ALJ gave "very limited weight" to the Dr. Nichols' conclusions. The ALJ gave limited weight to Dr. Nichols' report because it was internally inconsistent, based on information that was self-reported, and was formulated after the date last insured.[7] (R. 21) The ALJ noted that a one-time GAF score of 48 "does not indicate a listing level of functioning over

---

[7] Additionally, it makes little sense for the ALJ to discredit Dr. Nichols' report because it was prepared after the date last insured, considering that the ALJ requested the consultative examination in the first instance.

8

any particular time period at all, and not during the relevant time period." (R. 20-21) This statement is in direct contradiction to the ALJ's understanding of the GAF score at the hearing, where it clear that the ALJ could not discern what time period the GAF score related to. Without consulting Dr. Nichols about the relevant time period for the GAF score, it is impossible to discern from the record how the ALJ came to the ultimate conclusion reflected in the opinion. The ALJ also gave limited weight to Dr. Nichols' narrative report because it was internally inconsistent. (R. 21) Rather than disregard Dr. Nichols' report, a report the ALJ deemed necessary during the first administrative hearing, the ALJ should have made Dr. Nichols clarify the inconsistencies. This is especially true as the issues relevant to Thompson's ability to concentrate and her GAF score could very well have affected the ultimate result.

The ALJ determined during the first administrative hearing that a consultative psychological examination was necessary to appropriately evaluate Thompson's disability claim. The first hearing was continued until such information could be provided. If the information was important enough to continue the first hearing, then the passage of time surely did not minimize its significance. Unfortunately, Dr. Nichols' report was inadequate, ambiguous and inconsistent. Clearly, such a report did not provide the ALJ with the information sought after the first hearing. The only appropriate course of action would have been to contact Dr. Nichols and request a revised report to clear up its inherent ambiguities rather than reject the report out of hand.

### IV.

Pursuant to 20 C.F.R. § 404.1519p(b), the ALJ should have contacted Dr. Nichols for clarification before rejecting his "internally inconsistent" report entirely. Accordingly, the court

9

reverses and remands this matter for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER**: This 14th day of August, 2008.

/s/ Michael F. Urbanski
Hon. Michael F. Urbanski
United States Magistrate Judge